ODOM, Justice.
 

 Plaintiff brought suit against the defendant for $32,472.21, alleged to be the amount due on certain promissory notes of the defendant held by plaintiff. Plaintiff prayed also for interest on said amount at 8 per cent., and for 10 per cent, attorneys’ fees on the amount of principal and interest. Defendant answered, admitting his signature to the notes sued on and admitting also that he was indebted to the bank, but not in the amount claimed. He alleged that he had' made certain payments for which he had received no credit. He specifically denied that plaintiff was entitled to attorneys’ fees for the reason that no demand had been made for the payment of the notes previous to the date on which suit was filed. Pie further alleged in answer that he had tendered to the plaintiff $2,300, the amount of one of the notes, which tender was not accepted, for which reason he claimed he should not be charged interest on said amount.
 

 There was judgment in favor of plaintiff for the amount sued for, less a credit of $15.91, together with interest and attorneys’ fees as prayed for. The defendant appealed.
 

 The testimony shows beyond question that defendant owes the plaintiff bank the principal amount sued for. Both the president and cashier of the bank were called as witnesses and- testified that the amount claimed was correct and while defendant took the stand as a witness in his own behalf, he did not dispute the testimony of the president and cashier as to the principal amount due. While he alleged in his answer that he had not been given credit for certain amounts which he had paid, yet as a witness he did not dispute the testimony of the cashier that he had been given credit for all amounts previously paid in on the notes.
 

 Defendant strenuously insists that he should not be compelled to pay attorneys’ fees for the reason, as he says, no demand was made upon him for the payment of the notes previous to the institution of the suit. The testimony abundantly shows that repeated demands were made upon defendant for
 
 *993
 
 the payment of the notes by Mr. Davis, the president of the bank.
 

 While on the stand as a witness he was asked repeatedly if he had made demand, and to each question asked he answered that he 'had.
 

 The notes were finally placed in the hands of Mr. Ellis, an attorney, for collection. Upon receiving the notes for collection with instructions from the bank to file suit, if necessary, Mr. Ellis sent for defendant and his daughter, Mrs. Watkins, to come to his office. They went to the office, and Mr. Ellis says that'he informed them that something would have to be done about payment of the debt or furnishing additional collateral; otherwise suit would be filed. This is admitted by both defendant and his daughter, but they say that while it is true that Mr. Ellis told them that something would have to be done, yet he did not, in so many words, make demand for the payment of the debt. They testified that the conversation which took place related only to the question of the defendant’s ability and willingness to furnish additional collateral. Defendant and his daughter informed Mr. Ellis that they wanted further time to consider the question whether they would furnish the additional collateral required. Mr. Ellis informed them that he must have a definite answer by the following Saturday. They returned to the office at the time appointed and at that meeting they informed Mr. Ellis that they would do nothing. The suit was filed some three or four days later.
 

 Counsel for defendant stresses the fact that on one occasion he, his client, and one other person went to the office of the president of the bank to discuss the matter of settlement, and that quite a lengthy discussion took place between him and Mr. Davis, the president, at which time the president did not in so many words demand payment of the notes. Mr. Davis admits that. It seems that negotiations at that meeting had reference only to the question of additional security for the loan. But Mr. Davis says that while he made no specific demand for payment at that time, yet he had on various occasions previous to that time made specific demands.
 

 All the notes sued on were past due, and the record shows beyond question that the defendant had been given to understand that he must either make payment or else furnish additional collateral. The defendant was left in no doubt that, unless he satisfied the demands of the bank, suit would be filed against him. He was so informed not only by Mr. Davis, the president of the bank, but by Mr. Ellis, in whose hands the notes were finally placed for collection. We therefore find no merit in defendant’s contention that no demand was made upon him for payment.
 

 Aside from this, however, the attorneys’ fees are due because suit was actually filed.' With reference to attorneys’ fees, the notes contain the following stipulation: “And hereby agree to pay attorneys’ fees of 10% on the amount sued for, or recovered without suit, by sale or collection of the securities, in case of suit or legal services in or out of court.”
 

 With reference to the charge of interest on the $2,300 tendered, the facts are that this amount was tendered after suit was filed and after costs and attorneys’ fees were incurred by the filing of the suit. The defend
 
 *995
 
 ant neither tendered nor offered to pay any part of the costs or attorneys’ fees. The tender made was therefore insufficient to cover the entire amount due and was not such a tender as would relieve defendant of paying interest on the amount accruing subsequently.
 

 Plaintiff alleges that it had loaned de-' fendant $2,300 with the definite and distinct understanding that he would secure this loan by pledge of notes secured by mortgage on certain property which he then owned in Dayton, Ohio, and that instead of defendant’s making the mortgage on the Ohio property as he had promised to do, he went to the state of Mississippi and there deeded the said property to his wife; the consideration recited in the deed being one dollar and love and affection. Plaintiff alleges that this transaction was a simulation pure and simple and made for the purpose of defrauding defendant’s creditors, and especially the plaintiff. Plaintiff, in its petition, signified its desire and purpose to attack this transaction, and asked that its rights to do so be reserved. The prayer of the petition, as relates to this point, reads as follows:
 

 “Petitioner further prays that there be judgment specifically reserving petitioner’s rights to bring such further and necessary proceedings as it may deem necessary to protect its interests, and to set aside the alleged transfer by defendant, Henry B. Pruden to his wife, Fannie L. Pruden, of the property more fully described in Article 5 of this petition, in the courts of Montgomery County, Ohio.”
 

 The judgment, as relates to this point, reads as follows:
 

 “It is further ordered, adjudged and decreed that the right be preserved to the plaintiff, Covington Bank & Trust Company, to proceed in the courts of Ohio, and the courts of this or any other state vested with jurisdiction, to bring such action, either in law or in equity, as may be deemed necessary by the said Covington Bank & Trust Company to preserve its rights to set aside the transfer of said property in Dayton, Ohio, by defendant herein to his wife, Fannie L. Pruden.”
 

 Mrs. Pruden, the wife of defendant, was not made a party to the suit. Counsel for defendant earnestly argues that the judgment rendered seriously affects the rights of Mrs. Pruden and is highly prejudicial to the defendant. The judgment cannot possibly affect the rights of Mrs. Pruden, as she was not cited or served. Nor do we think that the judgment reserving plaintiff’s right to attack the transfer made by defendant to his wife will result in-any prejudice to defendant. It will be noted that the judgment does not authorize plaintiff to prosecute such suit, nor does it recognize its right to do so. It merely reserves to the plaintiff whatever rights it has in the premises. The judgment cannot be construed as an expression of opinion that plaintiff has such right, so that it is not reasonable to assume that the courts of the state of Ohio would be influenced in the slightest degree by the judgment rendered in this case.
 

 For the reasons assigned, the judgment appealed from is affirmed.